Good morning, may I please the court. I'm Fred Heblick. I'm an assistant federal public defender. I represent Daniel Mathis. There were ten issues raised in this appeal. I'm going to plan to address three of them. Two of them are applied to all of the defendants, all of the appellants. And one issue is just to the four capital defendants. And then Mr. Beers, who is going to address the four capital defendants. To address the obstruction of justice issue that applies only to the two non-capital defendants. All of the defendants in this case, at the close of the government's evidence, moved under Rule 29 for judgment of acquittal on the counts that involved a RICO enterprise, arguing that there was not substantial evidence produced by the government to prove the existence of an enterprise. Which was the heart of the RICO conspiracy count and also the necessary for the biker counts. The RICO statute does not give a proper detailed description of an enterprise. And the courts have not given a precise definition either. Although as a general proposition, a RICO enterprise must have an identifiable structure and a purpose apart from the racketeering activity that it is engaged in. Now the Supreme Court did, though, give a definition of what is not an enterprise. Well maybe if I could tell you what my specific concern about that argument is and you can respond in the context of what you're saying. This entity, DMGS I guess, seemed to have a chain of command and structure that the military would love. They had rules. They had their own dress code and required clothing. They had their own vocabulary, which changed as circumstances warranted. They had appropriate punishments meted out in response to progressive punishments. They were identifiable by what they wore and their caps. This seemed to be a very well thought out structure. So why is that not enough? Well what the court is referring to are the notebooks that were found in the apartment. No, not just that. Or I don't think so. But please go ahead and answer the question. The evidence, aside from the notebooks, there were three witnesses that the government had who were gang members who testified. And that was White, Jackson, and Bell. And they all testified that one of the things the government relies on is the rule to put in work, which they understood to mean committing crimes on behalf of the gang. No witness said that he committed a crime on behalf of the gang. And no witness said that anybody else committed a crime on behalf of the gang. They were committed for their own benefit. None of them knew the rules. They were asked the rules. They couldn't remember the rules. In fact, none of them had seen the notebooks that were recovered in the apartment. There had been another notebook that White had been given, but he didn't read. Although you know you can't read the facts in the light most favorable to the defendants at this point. Yes, Your Honor. And the, I'm just going on there. The evidence was of the government's own witnesses was that there was no discipline. Nobody was ever disciplined. In fact, nobody could say what the consequences were if a rule was broken. And as I just mentioned, they didn't know what the rules were. As for chain of command, there was theoretically a chain of command, but there was no evidence, no testimony that anybody ever issued any orders. That there were ever any orders issued, ever any orders followed. All of the, most of the trial, five, four, five week trial, was the government proving the underlying crimes. The robbery, the carjacking, the obstruction. And as I said, there were just three witnesses who testified how the gang, how the members of the gang operated. All of the robberies were committed either by one individual acting alone, Daniel Mathis, or in groups that included members of the gang and other people, other friends who weren't members of the gang. The government's witnesses testified that none of the crimes was planned, that there were no rules assigned, nobody had a particular role. And that the proceeds of the crime were for the individuals who committed the crime, and were divided among the participants of the crime. There weren't paid, there was testimony that there was a log fund, a common fund. But the witnesses testified that no money was ever put into a common fund, and there was no money that was ever paid out of a common fund. There was no common purpose of this group except to commit the racketeering acts. And if there's no separate purpose, and there's no separate entity that exists apart from the racketeering acts, then it's not a RICO enterprise. Under the government's theory, every street gang would be a RICO enterprise. And that's just simply way beyond the reach of the statute. Another issue that we raised was common to all the defendants of the anonymous jury. We assumed that because the defendants were charged with a capital offense, that the statute 18 U.S.C. 3432 applies, and that would require the court to give the names and addresses of the nearmen three days before the trial. The court didn't do that. The court found by a preponderance of the evidence that the court was required to find by a preponderance of the evidence that disclosure of the names would endanger the life or safety of any person. The failure of the court to make that finding, make an adequate finding, and the failure of the court to minimize the prejudice caused by the use of an anonymous jury, the failure on either one of those points is an abuse of discretion that requires reversal. The court never heard any evidence on the issue of endangerment. The court … But the court knew, though, that one of the defendants had taken the jury list in the first trial back to the jail. Isn't that correct? That's correct. Okay. That's pretty significant, isn't it? No. Why not? Well, there was no rule against him doing it. He was not told not to do it. All of the information was given. The first trial, there was no restrictions placed on the information whatsoever. And all of the usual information of the jurors' names, addresses, ages, spouses, employment, all of that was given to the defendants and the defendants' counsel. And we litigated this in the context of double jeopardy when a mistrial was declared, because even after that happened, what happened was the FBI agent involved in the case became aware, not that the list had gone back into the jail, he became aware of that, and then what that did was make him aware that all of the information had been given to the defendants. And it was just customary. What the court was doing was following the rule used in our district in every case. Didn't the district court at some point … You made reference to the fact that the court declined to give the names, addresses of the jury veneer. But didn't the district court actually do that at some point, but for the addresses? Didn't he give defense counsel the names and ages and zip codes of the veneer? Yes. He gave the names and the zip codes. And ages, right? And ages. Okay. So he didn't comply strictly with the requirements of the statute, but he came pretty close. He also let you review the questionnaires that they completed, too, didn't he? Right. Well, the questionnaires didn't have any personal information in them. And the questionnaires were coded by number, and we were not given the codes. We weren't given the code to match the name of the juror with the juror's questionnaire. So we got juror number 84. We didn't know who it was or what zip code the juror lived in. And we were prohibited from sharing any of that information with the defendants. And we were prohibited even from taking it into the courtroom. So, I mean, there's an old case from 1789 which talks about what a place of abode means. A zip code is simply not enough to give a place of abode. Did they have zip codes back in 1789? No, but they had townships. And that's what the Supreme Court said was that they at least had to give the township because at that point there weren't addresses. That was how mail was sent, by townships. The court relied on it. First of all, the court never explained how the jurors would have been endangered by the disclosure. And the court relied entirely on the allegations of the indictment, which Dinkins says is improper. You have to have actual preponderance of the evidence. Another issue that is peculiar to the capital defendants is the witness tampering issue. And there are two issues with that. One is the defective indictment, and the second is the insufficiency of the evidence to prove that count. The statute requires that it makes it unlawful to kill another person with the intent to prevent the communication to a law enforcement officer of the United States. The indictment omitted the words of the United States. Now, that was raised on behalf of Daniel Mathis after the jury was seated. It was not made before trial. Now, we litigated whether the old rule applied or the new rule applied. The district judge said no, the new rule applies. And under the new rule, if you make that kind of an argument, failure to state an offense, you can't make it at any time like you used to be able to. You have to do it before trial. So it's untimely. I'm not going to hear it. So the court never ruled on the merits. What the court did, though, is when the court gave the jury instruction, the court fixed the indictment and gave the jury instruction and inserted the words of the United States in the jury instruction. So the jury was properly instructed. It's just that the indictment was defective. The other part of the statute that creates a federal nexus, besides of the United States for the law enforcement officer, is that the prevented information has to be relating to the commission or possible commission of a federal offense. The indictment specified that the federal offense that the witness was killed to prevent communicating about was federal carjacking, 18 U.S.C. 2-1-1-9. And the jury was instructed as to the elements of carjacking. Now, again, we raised on Rule 29 that there was insufficient evidence to show that it was a federal crime, that it was carjacking, for two reasons. One, which is more difficult to get around, which is the intent at the time the car was taken that's required by Holloway and that this court dealt with in the Bailey case last year. But what's clear is that there wasn't a single iota of evidence produced that the car was shipped or transported in commerce, in interstate commerce. Are you going to deal with the 924C3 subject or its co-counsel? I was actually not going to. That's been briefed and we understand that... I'm sure you didn't run out of time. No, I wasn't planning to address that. Let's understand that the courts are waiting to decide whether that applies, whether the residual clause applies to 924C. I'd say that my time is up. Thank you. Thank you. And you did not reserve rebuttal time. Thank you. May it please the court, my name is Paul Beers. I'm a private practitioner from Brown Oak. I want to thank the court for appointing me to such an important and interesting appeal. I'm here on behalf of the non-capital defendants, Anthony Stokes and Yuru Halisi. I'd like to focus on the limited time I have on the obstruction of justice issue and conviction. That's 18 U.S.C. 1512C1, which criminalizes corruptly interfering with an official proceeding by destroying a document or other object. An official proceeding is defined in section 1515 as a federal proceeding in front of a federal judge or a federal administrative agency such as the Security Exchange Commission. In 2005, section 1512, some of these terms that are critical to our case, were analyzed by Chief Justice Rehnquist on behalf of the Unanimous Supreme Court in the Arthur Anderson case, which is the Enron case. And the court said there in a 1512 prosecution, the government must prove, not as a prima facie case or any other standard, but beyond a reasonable doubt that the defendant, when he committed the obstructed act, contemplated and foresaw a particular official proceeding, which again is a federal proceeding, not a state proceeding. In that case, it should have been very clear to the Arthur Anderson CPAs and lawyers that a Securities and Exchange Commission proceeding was in the offing because they had been notified one was in the offing. But still, those convictions were vacated. Why? Because, yes, Your Honor. But in the criminal context, as I understand it, in the civil context, at least as I understand it, the Supreme Court has read that to mean it has to be reasonably likely under the circumstances that at least one of the relevant communications would have been made to a federal officer. Is it your contention that that is not the case? Judge, I think the Court is referring to the Fowler decision. Yes. Yes. That is under a different prong, a different section of the statute, and the Third Circuit and the Eighth Circuit has said that Fowler has nothing to do with 1512. In fact, in Fowler, the Supreme Court didn't even mention Arthur Anderson two years earlier. So it's just a different, but... But I'm asking why is that not an appropriate standard, which the Supreme Court has adopted in circumstances far more analogous to this case than Arthur Anderson? In Arthur Anderson, the Court said in a 1512 prosecution, there needs to be proof beyond reasonable doubt of a contemplation of a particular proceeding. 2007, Fowler Court comes along, interprets a different section, and if they had meant, and this is something the Third Circuit pointed out, if they had meant to overrule Arthur Anderson, they would have said so or they would have refined Arthur Anderson, they would have said so expressly. But Arthur Anderson is talking about foreseeability. Isn't that it? That you've established the nexus when there is foreseeability. I think it's true. Why couldn't a jury, given the government benefit of the inferences that we have to at this point in time... Yes, Your Honor. Why couldn't the jury have inferred that it was reasonably foreseeable to Mr. Stokes that at the time he directed Castor Loew to dismember the gun and to throw the pieces or the components of the gun away... Yes, Your Honor. ...that he knew that there was, I mean, they were participating, as the jury found, in killing a police officer. Yes, Your Honor. Why wouldn't foreseeability and nexus be established for purposes of this obstruction of justice case? Because he could have been foreseeing a State proceeding, which is the entire whole problem. There's no Federal nexus. But I think the question, though, is why, when you kill a police officer, that someone couldn't reasonably foresee a Federal nexus, a law enforcement person. Why doesn't that mean, given the inferences, drawing inferences in favor of the government, why isn't that reasonably foreseeable, that the Federal government would take a dim view of killing law enforcement, even at the State level? Because even under Fowler, under that stream of jurisprudence, that's not enough. That was the standard in the 1990s, Your Honor, in a case called Harris, Fourth Circuit. As long as you could say, well, that could be a Federal offense and everybody knows that, that's enough. I see my time is up. No, please go ahead and finish the question. Thank you. And have you finished answering the question and any other questions the panel might have? I believe what Judge Keenan just outlined, the court just outlined, Judge Duncan, was the standard in the 90s in the Third Circuit and the Fourth Circuit under Harris. That was abrogated in 2012 by the Fourth Circuit in a case called Ramos-Cruz. There's got to be more than simply this is a heinous act. It could be prosecuted. No, that's not the predicate, not that it's a heinous act. That it could be a Federal offense. It could be punishable in the Federal system. Yes, that's not enough. There's got to be more evidence than simply that, that doesn't prove beyond a reasonable doubt they contemplated a particular official proceeding. Mr. Beers, why does the statute, maybe I missed this, you said it earlier and I was looking at something else, but why does the statute require, necessarily require in this context on these facts, that these defendants would have had to have been contemplating a Federal proceeding as opposed to any proceeding, State or Federal? Because the Supreme Court, again, Chief Justice Rehnquist, those provisions that the government dwells on, that is F-1 and G-1, were right in front of Chief Justice Rehnquist, and he read those to say that the government has to prove that the defendant, the criminal defendant, has to be contemplating a particular official proceeding. An official proceeding means a Federal proceeding, not a State proceeding. So the court looked at that question and basically abrogated the Fourth Circuit standard and the Third Circuit standard and said to prove a Federal nexus, you've got to have specific intent to interfere with a contemplated official proceeding, that is a Federal proceeding. It's not enough just to say, well, there could be a State proceeding out there. There's got to be more. It's just that Fowler talks about the defendant killing the victim to prevent the communication to law enforcement officers in general rather than to some specific law enforcement. It seems to me that it does bring within, or certainly can bring within the scope of foreseeability a communication in the context of preventing the victim's communication to law enforcement. If that were true, Judge, I suggest that Arthur Anderson would be eviscerated, it would be abrogated, because if anyone had noticed that the Federal Regulatory Agency was about to pounce when they were shredding those documents, it's Enron and Arthur Anderson, and they were not guilty. I hope I've answered the Court's question. Yes, thank you. Thank you, Your Honor. And you do have a minute for rebuttal. Yes, Your Honor. Good morning, Your Honors. May it please the Court, my name is Chris Cavanaugh on behalf of the United States. I'd like to focus on my time directly responding to the arguments that have already been brought forward towards the Court, specifically regarding the structure of the Double Nine Goon Syndicate. The appellants argue that merely the structure of proven trials from some witnesses and some notebooks, but this case is far more than that. Particularly, the government wants to point to the e-mails as well as the documents that were the guiding principles that were found in not only the Charlottesville apartment, in an e-mail from Hallecia Huru, Kevin Quick's vehicle, as well as a Value Place Hotel in Northern Virginia. All of those show the guiding principles and the structure of this organization as well. It wasn't merely just notebooks, and it also wasn't merely just the testimony of witnesses. Some of the best evidence of the structure comes from Appellant Stokes himself over a series of text messages, which can be found at the 4878 and 4879 of the Joint Appendix, in which he details to a potential recruit the structure of the Double Nine Goon Syndicate, and who's above it and who is below it, and what's required to be a member of it. So there simply was more structure than that. Appellant also argued that no witness testified that the robberies that they were committing were on behalf of the Double Nine Goon Syndicate. That is respectfully incorrect. Anthony White on cross-examination was asked directly, these robberies that you were committing had nothing to do with the Double Nine Goon Syndicate. He replied with, it did. We were putting in work for the gang, and that's at 1541 in the Joint Appendix as well. But it wasn't just Anthony White. It was also Shaquan Jackson who testified that never before had he committed a robbery, it wasn't until he joined the Double Nine Goon Syndicate, where he was expected to put in work to commit robberies, that he started to do that. And that he also, further evidence of this is that they wore red because they were, during these robberies, specifically during the Spinaugle home invasion, to show that they were members of the Bloods. On these facts, just for example, it was reasonable for the jury to find that there was a structure sufficient to satisfy this court's precedent in Mouzon as well as the Supreme Court's precedent in Boyle that there was an enterprise here in this case. Appellant also argues repeatedly in their brief as well as here today that these crimes were unplanned. Number one, that's respectfully incorrect. Number two, it doesn't matter even if it was, if they were. I point the court to the David Sharp robbery, for example, in which it showed how premeditated some of these acts were, in which these defendants decided to rob an elderly gentleman, would wait outside while they drugged him with Seroquel, fall asleep, and then came inside, armed with firearms, and stole his belongings. Also with the Spinaugle home invasion, again, there, the appellants discussed robbing the Spinaugle home. He was believed to be a drug dealer. On many occasions prior, and on one day they decided to do it, but one person would wait up top as a lookout and the other person would.  I don't think counsel, Mr. Hubbard, was suggesting that they weren't planned events, but he was saying they weren't conducted on behalf of the gang. Yes, Your Honor. And if that is what he was arguing, then I respectfully submit that Anthony White's testimony as well as Shaquan Jackson's testimony that I just went over proves that it was a fair inference that they were being conducted on behalf of the gang, on the gang, and Anthony White made that explicit. Are you going to get to the obstruction charges? Absolutely. Okay, not just as long as I make a bookmark the fact that that is something which I'm interested in. Your Honor, we can get there right now. As you wish. However you want to structure your argument is fine. I just don't want that to go unaddressed. No, Your Honor. Specifically, Mr. Appellant Stokes's argument is flatly contradicted by the plain text of 1512G, which states that no state of mind need be proved with respect to the federal circumstance of the official proceeding in this case. Now, Appellant argues that 15G1 simply does not apply in this case. He argues that 15G1 only applies when there is an official proceeding that is already pending. But respectfully, that argument is defeated by common sense. So what he is arguing is – Okay, let me just stop you there. So you're conceding that what has to be contemplated is a federal proceeding? No, Your Honor. No, Your Honor, I am not. I am arguing that someone has to contemplate an official proceeding, and Arthur Anderson makes that clear. But I'm proving that we do not have to prove the federal nature of that official proceeding. And in a circumstance precisely like this, how can a defendant – we don't require defendants, and 1512G makes this clear – we don't require defendants to know what courthouse a subsequent prosecution is going to be brought in at the time that they destroy evidence. And that is ultimately the crux of what he is arguing, is that the government had to prove that he knew and anticipated that this would be charged federally. That's not known by the joint investigators at the time, or even the prosecutors, much less the criminal defendants. Is there tension between Arthur Anderson and Fowler? No, Your Honor. And the argument that we are making – Arthur Anderson makes clear that someone has to foresee an official proceeding. It is about foreseeability. And here, that is absolutely – there's no question that Anthony Stokes was worried about an official proceeding, as the testimony of Jamar Rice made clear. Fowler – our reading of the statute jibes with Fowler, in which Fowler says that, yes, if someone kills a witness to prevent their communication with law enforcement generally, we're not going to require that they have a federal law enforcement in their mind. Rather, the government has to prove the federal nexus through other means, the reasonable likelihood that that communication would ultimately be made to a federal law enforcement officer. So, no, this reading jibes completely. What there is tension between is the defendant's reading of Arthur Anderson in 1512g, is that if Arthur Anderson is extended to read that a defendant now has to know the federal nature of an official proceeding that is yet to be implemented, then that means that Arthur Anderson sub silencio overrules 1512g, that strikes down 1512g, which clearly is not the case. And as the defendant recognizes this tension, and that is where they come up with the argument that says that 1512g only applies in cases where there is a pending and official proceeding, which would mean that the government has to show that a defendant knows the federal nature of an official proceeding when one hasn't yet been implemented, but the government is relieved from proving it when one already has been, when one already has been. And that is why I say it does not make any sense, is defeated by common sense. And the defendant spends a lot of time on the Third and the Eighth Circuit case, Petrick, Shavers, and Tyler, all of which tie their opinions in those cases. The conduct and intent of the defendants in those cases was unequivocally geared towards upcoming state court proceedings tomorrow or after the weekend, whether a witness is killed over the weekend for a state trial on Monday or a false alibi for an upcoming preliminary state proceeding on Tuesday where someone is trying to get a false alibi. That is simply not the case here. And this Court can reconcile with those decisions because here we don't have that. We don't have conduct geared towards a specific upcoming state proceeding, and we're not required to prove that he had that federal nexus in his mind. And last and finally, I wanted to touch on the anonymous jury issue that was brought up by appellants specifically, is that they argued that there was, because the appellants... There was absolutely nothing wrong with taking that identifying information back to the jail. That was an unprecedented event on behalf of the veteran courthouse security that was there. He probably wasn't told not to shoot the judge either. Presumably. And the record was absent any innocent explanation as far as why he would. And we're not requiring... The district court has to read the context and the circumstances there. And even though defendants argue there may possibly have been an innocent reason for him taking the jury list with addresses and information back to the jail, the government... It was just as plausible of an inference for the district court to make that it was for nefarious purposes. And from a pragmatic standpoint, that there were reasonable safeguards that were put in place here to make sure that the defendants were not prejudiced. Specifically, the defendants were given the questionnaires, which defendants, as appellants say, contained no personal information. I invite the court to look at the juror questionnaires. It's 20 pages with over 100 questions going into detail about what sorts of education, background, TV shows, reading material that these individuals like. And these were made available to the defendants. Right, but they're saying that they had no opportunity to match them to the identity of a particular person. The district court told, that is, the district court told appellants, the appellants' counsel, that they were given the names and the zip codes, and if they wanted the juror number of any of the subsequent, any of the juror questionnaires, that they could be given those if asked. Did they request that? Not to my knowledge, Your Honor, but I'll let them correct the record. Should I ask you about the witness tampering issue? Yes, Your Honor. So you argue that under the new version of Rule 12, that waiver is appropriate, but the rule doesn't say anything about waiver. So why isn't this issue simply forfeited and then subject to plain error review? The rule doesn't say anything about waiver, but this court, in an unpublished opinion in Venegas, said that it was waived, Your Honor, so that's where we make that argument, and that is the basis for that argument. Well, this panel is not bound by that. So let's say, let's assume we disagree with you, and the issue is forfeited. Why isn't this as plain as the nose on your face, the omission of the element of the offense? Your Honor, there, after this Court's decisions in Stevenson, as well as, sorry, this Court's decision in Higgs, as well as the Supreme Court's decisions in Mechanic, there is, any error in the omission of that element was harmless, and it did not contribute to the verdict that was ultimately obtained. The jury here was properly instructed on the elements that defendants requested, and they found beyond a reasonable doubt. And because of this Court's decision in Higgs, which stated that because the error, alleged error or defect in the indictment did not contribute to the verdict obtained, it was harmless beyond a reasonable doubt. Was Higgs a case involving a missing element? Yes, it was, Your Honor. In that case, there was an interstate commerce element that was missing from the indictment. And in Mechanic, I don't believe, was a missing element from the offense, but ultimately stands for the proposition that any theoretical prejudice in the grand jury proceedings was cured by the jury's verdict, subsequent verdict. And it's important to note here that no prejudice has been alleged by the defense as far as, for this missing language in the indictment. And why wouldn't the fact that a jury, any defect in the indictment is generally considered to be cured by the jury? Why wouldn't that be in the inquiry? And we believe it does, Your Honor. I see I have some time left, but I've responded to the arguments that I thought was necessary. If there are any other questions that the Court would have, I'd be happy to answer them. Thank you. Thank you. I'm sorry. Go ahead. If it pleases the Court, in one minute I want to point out that the Court has asked a number of questions about Fowler. I'd like to point out the United States did not once in its brief have cited Fowler. It's not relying on Fowler, and so it hasn't been developed in my brief. But I would like to direct the Court's attention if it would. In fairness, though, I did ask. Yes. But they know Fowler has nothing to do with this case because they haven't even argued it. Well, we don't. I mean, I think we can read Fowler. Yes. And decide whether it has a bearing. Yes. And I would ask the Court to look at the Third Circuit's analysis of Judge Duncan. Your very question, what's the relationship between Fowler and that line of jurisprudence and Arthur Anderson and our line? It's 693 F. 3rd, 363, page 379. They go into detail. That's not developed in the briefs, again, because they haven't even argued that kind of theory. I think what they're doing is they're inviting this Court to create a circuit court split between the Third Circuit and the Eighth Circuit and the Eleventh Circuit and the Fourth Circuit by trying to incorporate and borrow from Fowler to modify Arthur Anderson. I see my time is up. Thank you very much. Thank you. And I note that you and Mr. Heblich, are you court-appointed? I thought you were with the Public Defender. He's with the Federal Defender, as is Mr. Gill. Well, Mr. Beers, thank you very much for your service to this Court and your able representation of the client. Thank you. We would like to come down and ask the Court to adjourn the Court for today and come down in good counsel. This honorable Court stands adjourned until tomorrow morning. God save the United States and this honorable Court.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz